THE SULPHUR SPRINGS & MOUNT PLEASANT RAILWAY COMPANY v. THE ST. LOUIS, ARKANSAS & TEXAS RAILWAY COMPANY IN TEXAS.

### No. 410.

1. Railway Corporation — Forfeiture of Charter for Noncon- struction of Road.—Article 4728 of the Revised Statutes, providing, that if any railway corporation shall not, within two years after its incorporation, con- struct and put in operation at least ten miles of its proposed road, " such corpo- ration shall forfeit its corporate existence, and its powers shall cease as far as it relates to that portion of said road then unfinished, and shall be incapable of re- sumption by any subsequent act of incorporation," is self-executing, and failure

to comply therewith forfeits the charter without any judicial declaration; but the forfeiture relates only to the unfinished portion of the road, not to the completed part thereof, nor to property previously acquired, and the right of the corporation to retain and dispose of its property is not in any manner affected by the terms of this article.

2. Same—Property Rights Upon Dissolution.—Upon the dissolution of a corporation created by or under the laws of this State, its officers become trustees for its creditors and stockholders, and its property rights and assets become a trust fund for their benefit.

3. Same—Ownership of Forfeited Right of Way.—Where a railway corporation has acquired a right of way, and has forfeited its charter under the statute by its nonconstruction of its road thereon, such right of way does not revert to the grantors of the corporation, nor vest in the State, but constitutes an asset of the corporation, to be administered for the benefit of its creditors and shareholders upon its dissolution; and another corporation not connected with the old one has not the right to take possession of such unfinished road and hold it as its own property.

4. Trespass to Try Title — Costs Adjudged Against Plaintiff in Favor of Warrantors.—Where, in trespass to try title, the defendant properly vouches in his several warrantors, the costs of so doing are correctly adjudged against the plaintiff, in the event that judgment goes in favor of the defendants for plaintiff's failure to maintain the suit. Error in a matter of this kind, to be available on appeal, must be first called to the attention of the court below.

ON REHEARING.

5. Railway Corporation — Common Law Rule as to Effect of Dissolution Changed by Statute.—Under our statutes, the forfeiture of the charter of a railway corporation does not have the effect to divest, without compensation, the stockholders of their property rights in the roadbed acquired by their means; and to remove any apprehension from the minds of investors that the strict common law rule vesting in the State the right to the roadbed of the forfeited railway corporation might be the rule of decision here, was probably the principal reason for the enactment of our statutes touching this subject.

6. Same—Right of Another Corporation to Appropriate a Forfeited Roadbed.—If, upon the forfeiture of the charter of a railway corporation, its roadbed becomes the property of the State, another corporation, by simply taking out a charter calling for the terminal points of the forfeited charter, can not thereby acquire from the State the title to such roadbed.

7. Same — Pleading Possession of Roadbed to Sustain Ejectment.—Where one seeks to recover in trespass to try title a railway which extends over many miles, upon the ground of possession alone, he should go further with his allegations and proof than mere general statements which only show a possession that might not in fact extend beyond a very small part of the line.

APPEAL from Franklin.   Tried below before Hon. JOHN L. SHEPPARD.

*H. McKay*, for appellant.— 1. The plaintiff's pleadings showed a good cause of action, and the court erred in sustaining the demurrer thereto. 2 Sayles' Civ. Stats., arts. 4113, 4114, 4206, 4278, 4279.

2. Upon the failure of the Texas & St. Louis Railway Company to construct, equip, and put in good running order ten miles of said branch line within two years from the date of its charter, its chartered existence as to said branch line became forfeited, and its powers over and right to said uncompleted road and line of way ceased, nor did such right pass as assets to its stockholders. Bywaters v. Railway, 73 Texas, 624; 2 Sayles' Civ. Stats., art. 4278.

*Todd & Hudgins*, for appellee.—The plaintiff's third amended original petition disclosed no cause of action, and the court did not err in sustaining a general demurrer thereto. Const., art. 1, sec. 17; Cool. on Con. Lim., 457, 437, note; Railway v. Vischer, 114 U. S., 340; Maryland v. Railway, 3 How., 536; Water Co. v. Hamilton, 3 Am. and Eng. Corp. Cases, 421; Transportation Co. v. Smith, 15 Barb., 355; Child v. Chappell, 9 N. Y., 246; Judd v. Leonard, 1 Chip., 204; 3 Wait's Act. and Def., 9; 3 Wood's Ry. Law, 1709.

*Perkins, Gilbert & Perkins*, also for appellee.— 1. Where title to property is acquired with a condition subsequent attached thereto, no one can take advantage of a breach of this condition except the grantor. If it be a private grant, this can be done only by re-entry, or its equivalent; and if a public grant, it must be by judicial proceedings, or by legislative assertion of ownership of the property, for breach of the condition. Rev. Stats., arts. 4278, 4280; State v. Railway, 24 Texas, 115; 3 Wood's Ry. Law, sec. 497; Frost v. Frostberg, 24 How., 278.

2. One corporation can not acquire the title to the property of another corporation by the simple act of taking possession thereof; and this is true, though the first corporation may have omitted to do an act which is ground of forfeiture. 2 Sayles' Civ. Stats., art. 4247a, sec. 4; Railway v. The State, 75 Texas, 434; Railway v. Morris, 67 Texas, 698.

*H. McKay* and *Carter & Lewright*, for appellant, on motion for rehearing.—1. The railway company, by accepting its charter under our general laws, agrees to all that is expressed or implied by the statutes on the right of these corporations, and the whole of such statutes enter into and form parts of the contract between the State and the railway company. 1 Spell. on Priv. Corp., sec. 283; Greer v. Hauessler, 78 Mo., 188; 8 Am. and Eng. Corp. Cases, 322, note.

2. Appellee had forfeited the right of way of its unfinished road, and the State had the unquestionable right to grant to appellant a charter over the same way without a new condemnation. Railway v. Casey, 26 Pa. St., 307; Rev. Stats., art. 4206.

HEAD, ASSOCIATE JUSTICE.—On November 22, 1889, appellant filed its third amended original petition in the form of an action of trespass to

try title, but specially pleading the facts relied upon by it, to recover from appellee the title and possession of the right of way upon which is located the line of railway now in the possession of and operated by appellee between Sulphur Springs and Mount Pleasant, in this State.

The facts set forth in appellant's petition are, briefly, that in 1881 the Texas & St. Louis Railway Company, a corporation organized under the general laws of this State, acquired the right of way herein sued for, cleared the same off and graded a railway track thereon, but did not complete, equip, and put in good running order ten miles thereof within two years after the filing and recording of its articles of incorporation, whereby it is claimed said right of way and all that had been done thereon by said company became forfeited and subject to be appropriated by any new company that might take out a charter over the same way, without a new condemnation; and that in June, 1886, appellant took out such new charter and took possession of said right of way and the work done thereon as aforesaid, intending to build a road for itself over said line, and by reason of these facts claimed to be the owner of all the property so alleged to have been forfeited by said Texas & St. Louis Railway Company. That in January, 1887, appellee evicted appellant from said property, and completed a railway on said right of way, and has since been operating the same as its own.

It does not appear from the petition that appellant ever completed and put in running order any part of its road, although it is alleged that it was prevented from doing so by appellee, and that prior to its eviction it had done considerable work in the way of completing the grading, clearing the right of way, etc.

The value of said property is alleged to be $5000 per mile, and that there are forty miles of same, extending through Titus, Franklin, and Hopkins Counties.

The court sustained appellee's general demurrer to appellant's petition, and from this judgment this appeal is prosecuted.

Whatever our opinion may have been as an original proposition, it must now be received as the settled law of this State, that article 4278 of our Revised Statutes is self-executing, and that a railway incorporated under our general law which fails to comply with the provisions of said article, forfeits its corporate existence as to the unfinished part of its road, without the necessity of a judicial decree declaring such forfeiture in a direct proceeding instituted for that purpose. Bywaters v. Railway, 73 Texas, 624; Railway v. The State, 81 Texas, 572; Mayor of Houston v. Railway, 84 Texas, 590. It will be noticed, however, that it is only the forfeiture of the corporate existence of the association as to the unfinished part of its road that is declared by this article, and nothing is said therein as to the forfeiture of any property that it may have previously acquired; nor is its corporate existence as to the completed part of the road nor its

right to retain and dispose of its property in any manner affected. The language of the article is:  " Such corporation shall forfeit its corporate existence and its powers shall cease as far as it relates to that portion of said road then unfinished, and shall be incapable of resumption by any subsequent act of incorporation." It is therefore plain, that if appellant's case depends upon its establishing a forfeiture by the Texas & St. Louis Railway Company of the valuable property rights alleged to have been acquired by it, it must do so under some provision of the law, either common or statutory, other than the article above quoted.

" Under the common law the rule was, that upon the dissolution of a corporation its real estate reverted to the grantor, its personal property to the sovereign, and all debts due from and to it became extinguished, but this rule no longer has application to stock corporations in this country.   On the dissolution of a stock corporation its assets become a trust fund for the discharge of its liabilities, and the surplus belongs to the shareholders.   Equity will always furnish a means by which debts due a corporation can be collected after its dissolution, for the benefit of parties interested, either creditors or shareholders." Taylor on Priv. Corp., 2 ed., sec. 437, and authorities there cited.

That this is the law in this State there can be no question.   Our Revised Statutes, article 606, provide:   "Upon the dissolution of any corporation already created by or under the laws of this State, unless a receiver is appointed by some court of competent authority, the president and directors or managers of the affairs of the corporation at the time of its dissolution, by whatever name they may be known in law, shall be trustees of the creditors and stockholders of such corporation, with full power to settle the affairs, collect the outstanding debts, and divide the moneys and other property among the stockholders, after paying the debts due and owing by such corporation at the time of its dissolution as far as such money and property will enable them; and for this purpose they may maintain or defend any judicial proceeding." And in the case of Railway v. The State, 75 Texas, 378, our Supreme Court says: "Lawful dissolution of a corporation will destroy all its corporate franchises or privileges vested by the act of incorporation; but if it holds rights or privileges having the nature of property, secured by contract based on valuable consideration, these will survive the dissolution of the corporation for the benefit of those who may have right to or just claim upon its assets." And as to this particular kind of property, it is expressly provided by our statute, that it shall not be forfeited by a forfeiture of its charter by the corporation.

Article 4206 of our Revised Statutes reads: " The right of way secured or to be secured by any railway company in this State, in the manner provided by law, shall not be so construed as to include the fee simple estate in lands, either public or private, nor shall the same be lost by the

forfeiture or expiration of the charter, but shall remain subject to an extension of the charter or the grant of a new charter over the same way, without a new condemnation."

Appellant contends, that inasmuch as article 4278, cited above, provides that for a failure to comply therewith the corporation shall forfeit its corporate existence as to the unfinished part of its road, and "shall be incapable of resumption by any subsequent act of incorporation," article 4206 should be construed as preserving the right of way for the first new company, not connected with the old, that will take possession of it. But we are of opinion that this contention is not sound, even if it be conceded (which we do not decide) that the State has the power thus to take property of this kind from one corporation and give it to another without compensation.

It will be noted that article 4206 was enacted long before article 4278, and at a time when there was nothing in our law to prohibit the granting of a new charter to the company forfeiting the one under which the right of way was acquired; and we think this article was intended to preserve for the parties entitled thereto the property thus acquired, and prevent it from reverting to the original grantors, and not to transfer it to another corporation as a gratuity.

It may be that by reason of the subsequent provision inserted in article 4278 the old corporation will not be able to obtain a new charter so as to utilize this right of way itself by building thereon, but it nevertheless remains its property, to be sold for the benefit of its creditors and stockholders to some company that can utilize it for the purposes for which it was acquired, and appellant shows affirmatively that it has no title thereto by failing to allege a claim under such corporation. Lewis on Em. Dom., sec. 594.

At any rate, we are of opinion that article 4206 does not give this right of way and the work done thereon to a new company not connected with the old; and even though we be in error in holding that it still remains the property of the old company, notwithstanding the forfeiture of its charter for the unfinished part of its road, appellant is in no better position, for in this case it must recover upon the strength of its own title, and not upon the weakness of its adversary's. Railway v. Doe, ex dem Visscher, 114 U. S., 340.

Were it not for the provisions of our statute upon the subject, and the modification of the common law, as applied to the disposition of the property of stock corporations in this country upon their dissolution, it is quite probable that this right of way, having been acquired for a public use, would upon the forfeiture of the charter of the corporation vest in the State, to be applied by it to a similar use. Tifft v. Buffalo, 82 N. Y., 204. But we believe that the tendency of our courts of equity now is, even in the absence of a statute, to treat everything of value acquired by

the corporation as a fund to be administered for the benefit of its creditors and shareholders upon its dissolution; and we think our statutory provisions leave no doubt upon the question in this State, and that the principle also extends to a right of way.

Articles 4219 and 4261 of our Revised Statutes seem to recognize the right of the corporation to mortgage this class of property as its own, and authorizes the sale thereof under such mortgage; article 4262 authorizes its sale as the property of the corporation under execution for its debts; article 4206 provides, that "it shall not be lost by the forfeiture or expiration of the charter;" and article 606 provides for the distribution of the money and property of a dissolved corporation among its creditors and stockholders. We think the language of our Supreme Court in Railway v. The State, 75 Texas, 378, quoted above, is very much in point in sustaining this view.

Article 4278 only forfeited the charter of the Texas & St. Louis Railway Company for the unfinished part of its road, but left it in existence as a corporation for the completed part, capable of holding and disposing of property acquired by it. 84 Texas, 590, supra.

Another very serious question presented by this record is this: From appellant's third amended original petition it appears its charter was filed in June, 1886, and at the time of filing said amendment in November, 1889, it had not "constructed, equipped, and put in good running order as much as ten miles of its proposed road," as required by article 4278; and as this article is held to be self-executing so as to show the death and forfeiture by the Texas & St. Louis Railway for a like failure on its part, why does it not establish the death of appellant pending this suit, and require its abatement? It is well settled, that the dissolution of a corporation pending litigation abates the suit, unless it be revived under some provision of the statute. Life Association v. Goode, 71 Texas, 90; same case on former appeal, 2 Texas Law Rev., 151; Taylor on Priv. Corp., sec. 435.

It will thus be seen that more than two years had elapsed since January 1, 1887 (the extension granted by the act of 1885), before the filing of this amendment by appellant; and as the extension granted by the act of 1889 only applies to roads chartered since January 1, 1887, it would seem that there was nothing to save appellant, at the time of the trial below, from being in the deplorable condition in which it says it found the old Texas & St. Louis, unless it be the allegation that it was prevented from complying with said article by the acts of appellee. As to whether this will constitute a good answer to a forfeiture declared by a law of the State which decrees, that upon failure to comply with its provisions the corporation shall ipso facto cease to exist without a judicial ascertainment of such failure, we will not undertake to decide, as the question is not

presented by the parties, and we only call attention to it in case of further litigation.

In the court below appellee vouched in several parties alleged to be its warrantors, and appellant complains that the costs thus incurred are erroneously adjudged against it.   All of the parties hereto treat this as being an action of trespass to try title; and if so, it would seem that these warrantors were properly made parties, and the costs of so doing correctly adjudged, judgment having gone in their favor by reason of the failure of appellant to maintain its suit, and not on account of any issue between them and appellee.   Rev. Stats., art. 4788.   At any rate, it is well settled that before appellant can avail itself of an error of this kind on appeal, it must call it to the attention of the court below and seek to have it there corrected.   Jones v. Ford, 60 Texas, 127; Wiebusch v. Taylor, 64 Texas, 53; Bridges v. Samuelson, 73 Texas, 522; Dalton v. Rainey, 75 Texas, 516.

Finding no error in the judgment rendered by the court below, let it be in all things affirmed.

*Affirmed.*

Delivered January 10, 1893.

Justice STEPHENS concurs in the result, but not in all the reasons therefor given in the opinion.

### ON MOTION FOR REHEARING.

HEAD, ASSOCIATE JUSTICE.—We adhere to the opinion heretofore rendered.   By the very able opinion of the New York Court of Appeals, delivered in 1888, in the case of The People v. O'Brien, 111 New York, 1, we are much strengthened in the conclusion reached by us, that under our statutes the forfeiture of the charter of a railway corporation does not have the effect to divest, without compensation, the stockholders of their property rights in the roadbed acquired by their means.   Some of the statutes of that State construed in that opinion seem to be quite similar to our own.

The principal question in the case of Erie & Northeast Railway v. Casey, 26 Pennsylvania State Reports, 287, so much relied upon by appellants to sustain this motion, seems to have been the constitutionality of a statute about the meaning of which there was but little doubt; although it is not to be denied that there are expressions in that decision which go to the extent of holding, that upon the forfeiture of its charter by a railway corporation, its roadbed vests absolutely in the State, without compensation to the stockholders.   We believe this part of the decision could only be sustained, even in the absence of a statute, in jurisdictions where

the strict rule of the common law is in force as to the disposition of the property of dissolved corporations; and to remove any apprehension from the minds of investors that this might be the rule of decision in this State was probably the principal reason for the enactment of the statutes referred to in our former opinion.

The whole course of legislation in this State has ever been to foster and build up railroad enterprises, not to tear down and destroy them. The great body of our people have always manifested a desire to encourage the construction of these great highways, by affording to those who will furnish the means for this purpose the most liberal and ample protection; and we believe it would do violence both to the letter and spirit of our statute to give it a construction that would deprive these investors of the most valuable part of their property without compensation. It may be that there is no statute in this State now in force that will authorize the old Texas & St. Louis Company to make a voluntary sale of this right of way, but if some other company wishes to acquire it, it must do so by condemnation proceedings, or in some other way compensate those entitled to the assets of the old company.

But even if it be conceded that we are in error in this, the appellant is in no better position. All that is contended for under the rule announced in the Pennsylvania decision and those holding with it is, that upon the forfeiture by a railroad of its charter the roadbed becomes the property of the State; and we see nothing in the allegations in the petition which shows that appellant has acquired from the State the title so conferred upon it. We do not believe the simple taking out of a charter under our general incorporation laws calling for the terminal points of the forfeited charter can have any such effect. If the Pennsylvania case is correct, the title to this right of way, according to the allegations of the petition, is still in the State, and it will require additional legislation to take it out.

We have had some difficulty in deciding as to whether or not appellant's petition was sufficient to enable it to recover against appellee by reason of the prior possession therein alleged. It will be noted, that appellant did not content itself by alleging ownership generally, or even ownership by possession, but it went further and pleaded the facts relied upon as constituting its title, and its possession seems only to have been claimed as an incident to and in right of such title. In Pacific Express Company v. Dunn, 81 Texas, 85, it is said: " We do not understand that in actions of this character it is incumbent on a plaintiff to deraign title through writings from the sovereignty of the soil, or in some of the other methods in which title is acquired, but understand that an exclusive and peaceable possession of land furnishes prima facie evidence of ownership which, *if not rebutted,* is sufficient to maintain such an action as this, or

even ejectment or trespass to try title, against a trespasser or mere intruder;" citing a number of authorities. In this case appellant completely rebuts by its own allegations what might otherwise have been its prima facie title evidenced by possession.

We also entertain serious doubt as to the sufficiency of appellant's allegations to show that it had the exclusive and peaceable possession necessary to enable a plaintiff in ejectment to recover upon such title alone. It would seem, that where one seeks to recover a railway which extends over many miles, upon the ground of possession alone, he should go further with his allegations and proof than mere general statements which only show a possession that might not in fact extend beyond a very small part of the line. It looks too much like one going upon a hilltop and proclaiming himself to be in possession of the earth, and thereafter recovering against all who do not show a better title. At any rate, we do not think appellant's petition, when fairly construed, shows an intention to rely upon its possession independent of its real title for a recovery, and we believe no useful purpose could be subserved by prolonging this litigation by a reversal, even if appellant's allegations should be found to bring it within the language used in some of the decisions in a suit to recover a specific tract of land in the actual possession of the plaintiff.

Justice STEPHENS does not concur in the view entertained by a majority of the court as to the property rights of the stockholders in the right of way of a railway corporation whose charter has been forfeited, but does concur in the conclusion that appellant's petition fails to show that it has acquired title to the right of way in question.

The motion for rehearing is refused.

*Motion overruled.*

Delivered March 22, 1893.