**MISSOURI PACIFIC RAILROAD COMPANY, Appellant,**

v.

**JOHN JANCIK PRODUCE, Appellee.**

No. 137.

Court of Civil Appeals of Texas.

Corpus Christi.

Nov. 18, 1965.

Motions for Rehearing Denied Dec. 8, 1965.

Kleberg, Mobley, Lockett & Weil, Leslie S. Lockett, Corpus Christi, for appellant.

North, Blackmon & White, Jack E. A. White, Corpus Christi, for appellee.

GREEN, Chief Justice.

This suit involves a perishable freight loss and damage claim arising out of a carlot interstate shipment of lettuce. The fact that the shipment was damaged in transit through negligence of the carriers is not in dispute on this appeal. Appellant's two points allege error in the trial court not entering judgment for the appellant due to the failure of the appellee to meet its burden of proving fair market value of the lettuce at destination at the time and in the condition in which the shipment (1) actually arrived, and (2) should have arrived if properly transported.

It is agreed that the measure of damages in such a claim is the difference between the

market value at destination of the commodity had it arrived in the condition it should have been if properly transported, and the market value at destination of the commodity in the condition it actually was delivered, not to exceed indemnity for actual loss; and the burden is on the shipper to show such difference by a preponderance of the evidence. Missouri Pacific Railroad Company v. H. Rouw Company, Fifth Cir., 258 F.2d 445, cert. den., 358 U.S. 929, 79 S.Ct. 315, 3 L.Ed.2d 302; 13 C.J.S. Carriers § 255*l*(2), p. 572, et seq. The cited case holds that, while the general rule is as stated, it is subject to qualifications depending on the fact situation; and the trial court's judgment was reversed because it failed to take into account items of necessary expense, including selling expenses, in arriving at the true actual loss.

An important defect in appellee's testimony on value is that he relies on inconsistent and conflicting theories to establish the market value of the commodity in the condition in which the produce did reach destination, and the value in which it should have got there if properly transported. For the former, he introduced evidence that appellee actually received $1,056.00 from the consignee, after allowing consignee $800.00 off of the F.O.B. Pharr, Texas, purchase price due to the damage, and a stipulation that the consignee, if present in court, would testify that the price received for the commodity was the reasonable market value of that commodity at the time and in its condition upon arrival at destination. It will be noticed that the stipulation does not say by whom the price should be received, and each party places a different interpretation on that language, appellee contending it means the price received by him for the sale, and the appellant construing it to mean the price received by consignee on resale at destination. There was no evidence of consignee's sales, or any prices received by him.

This being an F.O.B. sale at Pharr, Texas, with appellee not liable to pay any freight charges or other expenses after the car was loaded at Pharr, and there being no evidence of what such freight and other expenses amounted to, if we accept appellee's construction of the stipulation as correct, and hold the evidence above mentioned sufficient to support the jury's verdict of $1056.00 as the value of the shipment as it arrived at destination, we are permitting appellee a market value at destination which does not include expenses that, according to appellee's own witness, Palmer, necessarily are included within the value of the produce at destination.

■ On the other hand, the evidence on which appellee depended to establish market value at destination of the produce in the condition it should have arrived if properly transported did include the freight charges, which appellee did not pay, and was not liable to pay, and selling expenses which appellee did not incur. It was to appellee's benefit to secure a low finding on value as the shipment did arrive, and a high finding on value as the shipment should have arrived, in order that the difference would fully cover his alleged loss. As evidence of this last mentioned value, appellee placed in evidence a copy of the U. S. Department of Agriculture Philadelphia (destination point) Fresh Fruit and Vegetable Daily Market Report for February 8, 1960, (date of arrival) which gave the following quotation for Texas lettuce received on the wholesale market to 9:30 A.M. in less than carlot or truck loads: "Texas 24S ord-fair qual. cond. 4.00–4.50 poor 3.00". Such market reports are admissible as evidence of value, when they are relevant to the facts. Art. 3731, Vernon's Ann.Civ. Tex.St.; Missouri Pacific Railroad Company v. John B. Hardwicke Co., Tex.Civ. App., 380 S.W.2d 706; Missouri Pacific Railroad Company v. Duncan, Tex.Civ. App., 353 S.W.2d 315; 23 Tex.Jur.2d Evidence, § 321, p. 463. Upon the basis of such report Palmer, appellee's office manager and salesman, testified that lettuce of the grade and condition as was in this ship-

ment should have brought four to four and a half, or five dollars even, because the market report quotation was based on ordinary to fair quality.

But on cross-examination, Palmer admitted that the market quotations he had used could not be compared with the F. O. B. sale for several reasons. He said that freight charges were included in both his opinion and the market report, although appellee was not liable for and did not pay them. He testified that the quotations in the market report included selling expenses, particularly a 10% commission, which was not true as to the F. O. B. sale. The quotations in the market report used as a basis for Palmer's values were for sales in less than carlot quantities. The F.O.B. sale was for a carlot quantity, and Palmer stated that as a general rule the price for produce bought in carlot quantities is lower. According to Palmer's testimony, comparing F.O.B. sale with the values as quoted in the market report was like comparing an apple with a banana.

Obviously, $1056.00 could not be the market value of the lettuce as it actually arrived at destination if the same standard is applied to the term market value as appellee set in introducing in evidence the market report which included the matter of freight charges (amount not proved) and other expenses; such figure would be more, though we are unable to state how much. On the other hand, if we find that the value at destination of the shipment in the condition in which it should have arrived is to be fixed by some standard that does not include the fixed, unproved expenses named, as appellee would calculate the "as it did arrive" market value, there is no evidence by which such value could be calculated. There is not any consistent, probative evidence in the record by which the court, on consistent jury findings, could determine the difference between the reasonable market value of the shipment at destination in the condition that it should have arrived if properly transported, and such market value of the shipment as it did arrive.

The stipulation as to what consignee would testify as to value of the shipment as it did arrive relied on by appellee must be construed consistently with the rule of measure of damages as declared in Missouri Pacific Railroad Company v. H. Rouw Company, Fifth Cir., supra. The F.O.B. selling price at point of origin, which resulted from a private sale between consignor and consignee, of which appellant in so far as the record reflects, had no notice, and which did not include freight and selling expenses, cannot be compared with the market report at destination which, according to Palmer's testimony, did include them, especially where there is no evidence of the amount of such expenses, and such F.O.B. price is not admissible as evidence of such value. Missouri Pacific Railroad Company v. Duncan, supra.

Since the $1056.00 received by shipper from consignee was based on the Pharr, Texas, selling price less the $800.00 allowance privately agreed upon by appellee and consignee, and included no freight charges or selling expenses, it could not constitute evidence of the market value of the produce as it arrived at destination, and we feel confident that the parties, in entering into the stipulation, did not intend that it should constitute such evidence. Appellant's contention as to the meaning of the stipulation is consistent with the market value at destination rule, while appellee's contention is not.

We find that the stipulation of the parties was not applicable to the testimony offered by appellee concerning the value as the shipment did arrive, and sustain appellant's first point.

In addition to other portions of Palmer's testimony, we call attention to his evidence that the market report was concerned only with sales in less than carlot shipments, and that as to carlot shipments, the prices were generally lower. We do not believe the report was relevant to the shipment in question and Palmer's opinion based thereon has

no probative value. Appellant's second point is sustained.

■ Having determined that the judgment below should be reversed, we are met with the issue whether to remand for new trial, or render judgment for appellant. The power of the Court of Civil Appeals with respect to this question is defined by Rule 434, T.R.C.P., as follows:

"When the judgment or decree of the court below shall be reversed, the court shall proceed to render such judgment or decree as the court below should have rendered, except when it is necessary that some matter of fact be ascertained or the damage to be assessed or the matter to be decreed is uncertain, in either of which cases the cause shall be remanded for a new trial."

In this appeal appellant does not dispute the fact that the lettuce was damaged due to carrier's negligence en route from shipping point to destination. The reversal of the judgment is due to the failure of appellee to meet its burden of proving by competent evidence the amount of damages to be assessed. On that issue the case has not been fully developed. It appears to us that for such reason, and because the justice of the case requires another trial the case should be remanded. Aetna Insurance Company v. Klein, 160 Tex. 61, 325 S.W.2d 376; Williams v. Safety Casualty Co., 129 Tex. 184, 102 S.W.2d 178; Dahlberg v. Holden, 150 Tex. 179, 238 S.W.2d 699, on rehearing; Hicks v. Matthews, 153 Tex. 177, 266 S.W.2d 846; Minneapolis-Moline Company v. Purser, Tex.Civ.App., 361 S.W.2d 239, writ ref., n. r. e.

The following is from the opinion in Davis v. Gale, 160 Tex. 309, 330 S.W.2d 610, on page 613:

"Where a judgment has been reversed, it is the rule to remand to the trial court for a new trial rather than to render, where the ends of justice will be better subserved thereby. See Rule 505, Texas Rules of Civil Procedure;

Hicks v. Matthews, 153 Tex. 177, 266 S.W.2d 846. It appears that the justice of this case demands another trial. This court has often remanded a cause to give parties an opportunity to supply additional evidence and to amend pleadings. See Hicks v. Matthews, supra; Associated Oil Co. v. Hart, Tex.Com. App., 277 S.W. 1043."

As stated in Pelham Manufacturing Company v. Ridlehuber, Tex.Civ.App., 356 S.W. 2d 502, writ ref., n. r. e.:

"* ·* * the fact 'that a peremptory instruction would have been justified' does not preclude remand. Hicks v. Matthews (supra); Aetna Ins. Co. v. Klein (supra). Remand, rather than rendition, has been consistent where the ends of justice are subserved, and deficiency of proof is obviously the result of a case not having been fully developed. Davis v. Gale, 160 Tex. 309, 330 S.W.2d 610, 613; Hall v. O. C. Whitaker Co., 143 Tex. 397, 185 S.W.2d 720, 724."

Reversed and remanded.

SHARPE, Justice (concurring in part and dissenting in part).

I am in accord with the holding of the Court that the judgment should be reversed, but I am unable to agree that the case should be remanded for a new trial. In my view, judgment should be here rendered for appellant. The parties will hereafter be referred to as in the trial court.

The opinion of the Court as to reversal rests firmly on correct holdings that the evidence wholly failed to raise issues of fact concerning the reasonable market value of the lettuce involved at destination point of the shipment either (1) in the condition in which it should have arrived, or (2) in the condition in which it actually arrived.

At the close of all the evidence a directed verdict in favor of the defendant would have been proper. After the jury verdict

defendant's motion for judgment non obstante veredicto was good. It thus appears that defendant was entitled to judgment in the trial court that plaintiff take nothing by this suit. Nevertheless, the trial court rendered judgment against the defendant on this shipment in the amount of $800.00, plus interest.

On this appeal the defendant contends that the judgment should be reversed and here rendered in its favor. The plaintiff primarily contends that the judgment should be affirmed, but with reference to the stipulation concerning the reasonable market value of the lettuce in the condition in which it actually arrived (involved only in one special issue and in point one of the case), says, "If it is now held to be inadequate, justice can only be served by remanding this case for a new trial, * * *" This is the only ground relied upon by plaintiff as a basis for remand.

The majority decision to remand this case for a new trial is based upon Rule 434, T.R.C.P., and cases construing it and its predecessor statutes. When we examine that Rule, we find that a Court of Civil Appeals upon reversal is directed to render such judgment or decree as the court below should have rendered except (1) when it is necessary that some matter of fact be ascertained, or (2) the damage to be assessed or the matter to be decreed is uncertain. When we examine the cases under Rule 434 we find that they announce the following rules:

"Even if the appellate court determines the trial court erred in failing to instruct a verdict, it may remand if the case was tried on an incorrect theory or was not fully developed, or where it appears 'that the justice of the case demands another trial.' But where the record discloses an insuperable barrier to right of recovery, judgment should be rendered; and although the Court of Civil Appeals has wide discretion in determining whether to remand, unless the exceptions above noted exist there is no case for exercise of discretion if an instructed verdict was proper. It is 'the uniform practice of the appellate courts in Texas' to render and not remand." Appellate Procedure in Texas, § 18.17 (by Judge Frank M. Wilson).

In this case the plaintiff, in effect, relies solely for remand upon the ground that "justice can only be served by remanding this case for a new trial." The plaintiff does not specifically contend that it is necessary that some fact be ascertained or that the damage to be assessed or the matter to be decreed is uncertain or that the case was tried on an incorrect theory or was not fully developed.

In my view, the plaintiff in order to avoid rendition of judgment here must demonstrate that the case falls within one of the recognized exceptions under Rule 434 T.R.C.P. If this is not done, we have no alternative but to render judgment rather than remand the case for a new trial.

In this case the defendant contested plaintiff's claim to recover damages in any amount. The plaintiff wholly failed to meet his burden of establishing either of the essential elements of the alleged market value damages. The plaintiff was not misled by any ruling of the trial court or by conduct of counsel for the defendant. He was not in any way prevented from properly and fully developing his cause of action for damages, if he had one. The failure to prove his case is attributable to the plaintiff, not to anyone else. I believe that this last-mentioned factor is highly important in determining whether to render judgment or remand for new trial.

The defendant properly conducted its defense concerning damages in such a way that it was entitled to judgment in its favor. The defendant was entitled to rely upon the plaintiff's failure of proof to defeat any recovery of damages, which is exactly what happened. When the plaintiff announced ready for trial he was on notice that he must

meet his burden of proof as to damages or suffer a take-nothing judgment. A party to a suit is supposed to fully develop his cause of action or defense when the case is tried, and, in the absence of a showing to the contrary this will be presumed to have been done.

Plaintiff does not contend here that he was prevented from fully developing his case upon the first trial. He makes no showing that he will be able to produce other evidence upon a new trial. The only ground mentioned by plaintiff which might fall in the category that "the justice of the case demands another trial" is the one hereinbefore referred to in connection with a stipulation relating to the market value of the lettuce in the condition in which it actually arrived at destination. The plaintiff could have easily met his burden under that stipulation by simply showing the amount received for the lettuce by the consignee at destination. If that evidence was available it should have been produced by the plaintiff. The effect of remand would be to assume, without any basis, that such evidence would be available on a new trial. Even then, there would be no satisfactory explanation as to why it was not produced on the first trial. There is no showing here as to why the case was not more fully developed on either of the two damage issues upon which plaintiff had the burden of proof. Nothing has been presented which would show that the case has not been as fully developed as it ever will be. Absent such a showing we cannot presume that plaintiff did not produce all the evidence within his power necessary to establish his case.

Many reported cases reflect that the question of whether, upon reversal, to render judgment or to remand for a new trial, is a vexatious one. It is difficult to determine from the opinions in many cases the exact reason justifying remand for a new trial. No useful purpose would be served by considering such decisions here. However, one of the best statements I have found in connection with the decision to render judgment or to remand where a plaintiff failed in his proof is contained in an opinion by Judge Fly, then a Justice, and later Chief Justice, of the San Antonio Court of Civil Appeals, in the case of Maverick v. Routh, 7 Tex. Civ.App. 669, 26 S.W. 1008, 1010 (1894, n.w.h.), as follows:

"The judgment must necessarily be reversed, but appellees insist that when a cause cannot be affirmed by an appellate court, and it does not satisfactorily appear that justice to all parties will as certainly be done by reversing and rendering as by remanding, the latter should be done. The statute (sec. 36, p. 31, Acts 1892) provides that 'when the judgment or decree of the court below shall be reversed, the court of civil appeals shall proceed to render such judgment or decree as the court below should have rendered, except when it is necessary that some matter of fact be ascertained, or the damages to be assessed or the matter to be decreed is uncertain, in either of which cases the cause shall be remanded for a new trial in the court below.' This is a re-enactment of article 1048, Sayles' Civ.St. While it would be the duty of the appellate court to reverse and remand where the ascertainment of some fact was necessary to support the rendition of the proper judgment of the court, still we are of the opinion that a case should not be remanded because the successful party in the court below failed to introduce sufficient testimony upon which to justify a judgment. If appellees had been unsuccessful, and were before this court in the attitude of appellants, complaining of the judgment below, we would be compelled to affirm the judgment, and not reverse it merely to give them an opportunity to amend their proof. Appellees stand in no better relation now than they would

were they appellants. It is insisted that where manifest injustice will be done by a rendition of judgment in the appellate court, the cause should be remanded. This may be true, but we cannot say that injustice will be done by rendering a judgment in this court. Had appellees been lulled into security by any ruling of the court, or perchance any act of appellant, they might claim with reason that another opportunity should be given in order to fully develop the case, but, in the absence of any obstruction, we cannot presume that appellees, appreciating the fact that the burden was upon them to establish a breach of the covenants of warranty, did not produce every fact within their power necessary to establish their case. The judgment of the lower court is reversed, and judgment is here rendered for appellant for all costs in this and the lower court expended."

The provisions of Rule 434, T.R.C.P., are the same as the statute involved in Maverick v. Routh, except for minor immaterial changes in references to the appellate court and the trial court.

The Supreme Court of Texas has held in the case of London Terrace v. McAlister, 142 Tex. 608, 180 S.W.2d 619 (1944), where rendition of judgment was held proper, with reference to Rule 434, T.R.C.P., applicable to the Court of Civil Appeals, and Rule 505, T.R.C.P., applicable to the Supreme Court, as follows:

"There is no substantial difference in the meaning of the two rules, because the phrase 'when it is necessary that some matter of fact be ascertained or the damage to be assessed or the matter to be decreed is uncertain', employed in Rule 434, means the same as the language 'if it shall appear that the justice of the case demands another trial', used in Rule 505. Williams v. Safety Casualty Co., 129 Tex., 184, 102 S.W.2d 178."

I believe that Judge Fly's sound reasoning in Maverick v. Routh is fully applicable to the instant case in the light of London Terrace v. McAlister, supra. Some of the cases decided by the Supreme Court of Texas upholding rendition of judgment, rather than remand for a new trial, are: Yarbrough v. Booher, 141 Tex. 420, 174 S.W.2d 47, 49, 150 A.L.R. 1369 (1943); Nardis Sportswear v. Simmons, 147 Tex. 608, 218 S.W.2d 451, 455, 219 S.W.2d 779 (1949); Haynes v. State, 100 Tex. 426, 100 S.W. 912 (1907); Findlay v. State, 113 Tex. 30, 250 S.W. 651 (1923); Texas & P. Ry. Co. v. Hogenloh, 151 Tex. 191, 247 S.W.2d 236 (1951). If the trial court in this case had rendered judgment for the defendant, which should have been done, and the plaintiff had appealed, we would be required to affirm it. Our Supreme Court, in the recent case of City of Houston v. Blackbird, 394 S.W.2d 159, 165 (Tex.1965), has reiterated the rule that "It is well settled that an errorless judgment of a trial court cannot be reversed in the interest of justice or to permit the losing party to have another trial." If the trial court in our case had rendered the correct judgment, we would not be required to consider remand for new trial under Rule 434, T.R.C.P.

It is clear to me that plaintiff has failed to demonstrate that "the justice of the case demands a new trial" or as plaintiff puts it " * * * justice can only be served by remanding this cause for a new trial." I cannot find a proper basis on the present record for requiring this case to be tried again. I would readily agree to a remand for new trial if the plaintiff had demonstrated that the case falls within one of the recognized exceptions to rendition of judgment. The defendant has already been put to the expense of this appeal, and if the case is remanded will be put to additional trouble and expense, all brought about without its fault. A remand of this case, in effect, tells the defendant: "You were entitled to judgment in your favor on the first trial of this case because the plaintiff wholly

failed to meet his burden of proof and the trial court erred in rendering a judgment against you. You correctly sought relief by this appeal and the appellate court agreed with you and reversed the judgment. Although you have properly and fully defended against the claim asserted against you, and although you have been put to the expense of an appeal in order to seek relief from an incorrect judgment, nevertheless, we will require you to undergo another trial with the attendant trouble and expense in order to give the plaintiff a second opportunity to prove his case, all without any showing or satisfactory explanation by the plaintiff of his failure to do so upon the first trial." I do not believe that such position is within any legitimate demand of justice.

There should be a proper end to litigation. Where a defendant was entitled to judgment in the trial court a case should not be remanded for new trial unless it falls within one of the recognized exceptions to rendition of judgment under Rule 434, T.R.C.P. In my view, a proper case for remand, upon reversal of an incorrect judgment, is not presented where it appears that the failure to fully develop the case is attributable solely to the plaintiff, who has wholly failed to offer evidence of probative force to support findings essential to the recovery. The same rule would be applicable to a defense upon a like failure of proof.

Instead of having a case where "the justice of the case demands another trial" I believe that what we have is a case where, in the words of Rule 434, T.R.C.P., justice demands "that the court shall proceed to render such judgment or decree as the court below should have rendered."

I respectfully dissent to the action of the Court in remanding the case for a new trial. I would not only reverse the judgment of the trial court, but would here render judgment in favor of the defendant.