ELECTRICAL CONTRACTING AND MAIN-
TENANCE COMPANY, Appellant,

v.

PERRY DISTRIBUTORS, INC., Appellee.

No. 17098.

Court of Civil Appeals of Texas.

Dallas.

July 12, 1968.

Rehearing Denied Sept. 27, 1968.

Jack D. Eades, of Clark, West, Keller, Clark & Ginsberg, Dallas, for appellant.

Robert H. Thomas, of Strasburger, Price, Kelton, Martin & Unis, Dallas, for appellee.

BATEMAN, Justice.

Our former opinion is withdrawn and the following substituted therefor.

The appellee Perry Distributors, Inc. sued the appellant Electrical Contracting and Maintenance Company, Inc. and W. C. Fuller, its president, to recover the purchase price of certain appliances allegedly purchased for an apartment project owned by Fuller. Judgment was rendered for appellee against the appellant only, based on jury findings. The corporate defendant appeals on six points of error; and the appellee cross-appeals on three cross-points of error.

In response to Special Issue No. 1, the jury found that the appellant, acting by and through W. C. Fuller, "by either express and/or implied contract," purchased from appellee the appliances in question. Special Issue No. 2 was submitted, to be answered only if Special Issue No. 1 were answered "No", and inquired whether the jury found from a preponderance of the evidence that W. C. Fuller, acting individually and as an owner of the apartment project, by either express and/or implied contract, purchased the appliances from appellee. There was no answer to this issue since No. 1 was answered "Yes." In Special Issue No. 3 the amount due appellee was found to be $22,609.95.

In its first four points of error on appeal the appellant attacks the submission of Special Issue No. 1 and the finding of the jury in response thereto because there was neither pleading nor evidence to support same and, in the alternative, that the evidence was insufficient, and that the finding was against the great weight and preponderance of the evidence; also that the issue is multifarious and a comment upon the weight of the evidence.

Appellee alleged that Fuller and one F. Van Davis had entered into a construction contract with one Kimmey and Ron-Lee Development Corporation, under the terms of which Kimmey and Ron-Lee Development Corporation would build an apartment building on certain land owned by Fuller for which they would receive a 5 per cent interest in the apartment project; that Fuller, acting on behalf of himself "and his partners, Kimmey and Ron-Lee Development Corporation," contacted appellee and ordered from it the appliances in question, which were sold, delivered and installed by appellee in the apartments owned by Fuller. Then appellee alleged:

> "Plaintiff brings suit herein against the Defendant Fuller as the purchaser of such appliances individually and as partner or joint venturer with Kimmey and Ron-Lee Development Corporation and possibly Keith W. Wood in the amount of $22,609.95. Plaintiff also brings suit herein for said amount against the Defendant Electrical Contracting and Maintenance Co. for the reason that the Defendant Fuller, as owner and President of said corporation, directed Plaintiff to send a bill to said corporation, inasmuch as it had the electrical sub-contract on the apartment project."

Appellee did not sue Davis, Kimmey or Ron-Lee Development Corporation, alleging that Davis and Kimmey could not be found and that Ron-Lee Development Corporation "is out of business."

Appellee did not allege that appellant had purchased or received the appli-

ances or agreed to pay for them, or that appellant did any act which could be construed as a purchase by it of the appliances or an agreement to pay for them. Moreover, there was nothing in the petition to notify appellant that appellee was relying on the doctrine of apparent or ostensible authority or on an implied contract. The allegation that Fuller, as owner and president of appellant, directed appellee to send a bill to appellant, must be read together with appellee's other allegations, which show definitely that the appliances were being purchased by Fuller for installation in his own apartment project, in which appellant was not alleged to own any interest whatever. The allegation that Fuller directed appellee to send the bill to appellant, "inasmuch as it had the electrical sub-contract on the apartment project," is merely an allegation of something which Fuller said and is not an allegation by appellee that appellant had an electrical subcontract or any other connection with the project. There being nothing in appellee's entire pleading that alleges a cause of action against appellant, we hold that there was no pleading to support the submission of Special Issue No. 1 or the jury's finding in response thereto.

The evidence followed the aforesaid pleading and likewise fell short of supporting Special Issue No. 1. C. A. Chidley, sales manager of appellee, testified that he sold the appliances by means of several telephone conversations with Fuller. When asked whether Fuller told him anything about his connection with appellant, he said:

"Not at that time. When he gave me the order for this merchandise and agreed that we had the job *that we had sold him,* I asked him *where* to bill it, and he told me then to bill it to this company, E.C. & M., that he owned the company." (Italics ours.)

Later in his testimony Chidley was asked whether *anyone had instructed* him to make out the invoice to appellant, and he testified that Mr. Fuller had told him to "bill to E.C.

& M., his company. * * * He said that he owned the company, and to bill them— him for this merchandise at that company."

We have read the entire statement of facts carefully and we find no evidence that anyone authorized by appellant purchased the appliances in question or agreed to pay for them. Fuller denied having had any telephone conversation with Chidley or anyone else acting or purporting to act for appellee. We think it is clear from Chidley's testimony that he, having sold the appliances to Fuller personally over telephone, merely asked Fuller *where* to send him the bill, and that Fuller told him to bill it to him, Fuller, at or in care of the appellant company.

Appellant points out that Chidley in his testimony admitted that he knew throughout the negotiations that Fuller owned the apartment project and that nothing was said about his connection with appellant until after the order was given and Chidley asked where the bill should be sent. The doctrine of apparent authority cannot be relied on in these circumstances. 14 Tex. Jur.2d, Corporations, § 339, p. 444. The apparent authority for which a principal is liable results from some act of the principal; it cannot be established solely by the acts or conduct of the agent. This is true even when the agent is president of the corporate principal, but is interested as an individual in the transaction and such personal interest is known to the person dealing with him. 2 Williston on Contracts, 3d Edition, § 277A, pp. 222–233; 19 Amer.Jur.2d, Corporations, § 1257, p. 666; Passmore v. Dallas Distributing Co., 1 S.W.2d 666 (Tex.Civ.App., San Antonio 1927, no writ); Fite v. First National Bank of Seymour, 279 S.W. 581 (Tex.Civ.App., Amarillo 1926, no writ).

Therefore, we hold that there is no evidence in the record to support the submission of Special Issue No. 1 or the jury's answer thereto. If we were persuaded that there was at least some evidence, more than a scintilla, in support thereof, we would

then hold that the evidence was insufficient to support such issue or the finding and that the finding was against the great weight and preponderance of the evidence. Our decision that the special issue is supported by neither pleading nor proof makes it unnecessary for us to discuss its other alleged defects. For the reasons stated, appellant's first four points of error are sustained.

■ By its fifth point of error the appellant complains of the definition given by the court in connection with Special Issue No. 1, as follows:

"You are instructed that a contract implied in fact is one in which, under the circumstances, the acts of the parties are such as to indicate, according to the ordinary course of dealing and the common understanding of men, a mutual intention to contract is contemplated."

Appellant says that this definition was erroneous as placing an undue and unreasonable burden upon appellant "not covered by the pleadings of the Plaintiff and not covered as an ultimate issue in this lawsuit," and also because there was no evidence, and insufficient evidence, to support the same.

Consistent with what we have said above concerning the lack of pleading or evidence to support the submission of Special Issue No. 1, we hold that there is no pleading or evidence, and in any event insufficient evidence, to support this special instruction. For that reason, Point 5 is sustained.

■ By its sixth point of error the appellant complains of Special Issue No. 3, which inquired as to damages, because there was no pleading to support same and because said issue is multifarious, duplicitous and a comment on the weight of the evidence. Special Issue No. 3, which the jury was instructed to answer only if Special Issue No. 1 or Special Issue No. 2 had been answered "Yes", was as follows:

"What sum of money, if any, if paid now in cash, do you find from a preponderance of the evidence, will fairly and reasonably compensate Perry Distributors, Inc. for the appliances set forth in Plaintiff's Exhibit No. 1 and the services and supplies set forth in Plaintiff's Exhibit No. 2, if you have found in answer to Special Issue No. 1 or Special Issue No. 2 that such electrical appliances were purchased, when determined in keeping with the express or implied contract in question, if any you have heretofore found?

"Answer in dollars and cents, if any."

We agree with appellant. No issue was raised by the pleading of either party, and there was no evidence, as to what would "fairly and reasonably compensate" appellee for the appliances in question, yet the issue as submitted allowed the jury to speculate as to what was fair and what was reasonable. Schoenberg v. Forrest, 228 S.W.2d 556, 562 (Tex.Civ.App., San Antonio 1950, writ ref'd n. r. e.). The suit against Fuller was on an alleged express contract to pay a certain price for certain goods allegedly sold to him. As above noted, no cause of action was alleged against appellant. For the reason stated, the sixth point is sustained.

■ Appellee's first cross-point of error is that the trial court erred in failing to render judgment in its behalf against W. C. Fuller and appellant jointly and severally, "based upon the jury's findings at the first trial." The judgment rendered at the first trial was set aside and a new trial granted by the trial court. The findings of the jury at the first trial could not form the basis of a judgment resulting from a second trial. This cross-point is therefore overruled.

■ Appellee's second cross-point of error asserts error of the court in making Special Issue No. 2 conditional upon a negative answer to Special Issue No. 1. Appellee did not voice any such objection to the charge prior to its submission to the jury, and it cannot do so for the first time on appeal. Rule 272, Vernon's Texas Rules of Civil Procedure. The second cross-point is overruled.

■ Appellee's third cross-point of error is that the trial court erred in failing to render judgment in its behalf against W. C. Fuller "as a matter of law on the undisputed evidence." The evidence was conflicting as to whether Fuller contracted to purchase the appliances, and it was a fact issue to be determined by the jury. Therefore, this cross-point is overruled.

■ From what we have said above, it is apparent that the judgment against the appellant Electrical Contracting and Maintenance Company must be reversed. Having held that there is no evidence to support the only jury finding against appellant, and since we cannot say that the case has not been fully developed as to it, the appellant is entitled to be finally discharged as to the cause of action asserted against it. Jackson v. Ewton, 411 S.W.2d 715 (Tex.1967).

■ However, since the manner of submission of the special issues did not give the jury the opportunity to pass on whether the cross-appellee W. C. Fuller had individually contracted to buy the materials in question from appellee Perry Distributors, Inc., the case should be remanded for a determination of that issue; this in spite of the fact that we have overruled all three of appellee's cross-points of error. The case was submitted to the jury on a wrong theory, and under the peculiar circumstances reflected by the record before us it is our opinion that great injustice would be done to appellee if we were to hold that on this record appellee was not entitled to a judgment against either appellant or Fuller. In our opinion, the ends of justice would be better subserved by remanding the case for trial of appellee's claim against Fuller. Hicks v. Matthews, 153 Tex. 177, 266 S.W.2d 846, 850 (1954); Williams v. Safety Casualty Co., 129 Tex. 184, 102 S.W.2d 178 (1937); Benoit v. Wilson, 150 Tex. 273, 239 S.W.2d 792, 799 (1951); London Terrace v. McAlister, 142 Tex. 608, 180 S.W.2d 619, 621 (1944).

The duty of the Court of Civil Appeals in this situation is defined by Rule 434, T.R.C.P. as follows:

"When the judgment or decree of the court below shall be reversed, the court shall proceed to render such judgment or decree as the court below should have rendered, except when it is necessary that some matter of fact be ascertained or the damage to be assessed or the matter to be decreed is uncertain, in either of which cases the cause shall be remanded for a new trial."

On the trial of this case it was not ascertained, by jury finding or otherwise, whether W. C. Fuller had, as an individual purchased or agreed to pay for the merchandise. In that respect the case has not been fully developed. For that reason, and because the justice of the case requires another trial, the case should be remanded. Missouri Pacific Railroad Co. v. John Jancik Produce, 396 S.W.2d 427, 430 (Tex.Civ. App., Corpus Christi 1965, no writ); Hall v. Hard, 160 Tex. 565, 335 S.W.2d 584 (1960).

Our holding that there was neither pleading nor proof to support the submission of Special Issue No. 1 places the case in the same posture, so far as appellee's cause of action against Fuller is concerned, as if the jury had answered Special Issue No. 1 in the negative. This, under the conditional submission of Special Issue No. 2, would require that the jury answer that issue, and the case should be remanded in order that a jury be given that opportunity.

Accordingly, the judgment appealed from is reversed and remanded with instructions to the trial court that final judgment be rendered that the appellee Perry Distributors, Inc. take nothing by its suit against the appellant Electrical Contracting and Maintenance Company; and that the cause of action asserted by the appellee Perry Distributors, Inc., against W. C. Fuller be tried. The costs will be taxed, half against the appellee Perry Distributors, Inc., and half against the cross-appellee, W. C. Fuller.

Reversed and remanded with instructions.